UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ZACHARY WINSTON, derivatively on behalf of LKQ CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>JUSTIN L. JUDE, RICK GALLOWAY, DOMINICK P. ZARCONE, GUHAN SUBRAMANIAN, ANDREW C. CLARKE, BLYTHE J. MCGARVIE, PATRICK BERARD, JODY G. MILLER, JOHN WILLIAM MENDEL, MEG ANN DIVITTO, XAVIER URBAIN, JAMES S. METCALF, and JOSEPH M. HOLSTEIN,<br><br>Individual Defendants, and<br><br>LKQ CORPORATION,<br><br>Nominal Defendant. | CASE NO:<br><br>VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND BREACH OF FIDUCIARY DUTY<br><br>DEMAND FOR A JURY TRIAL |

Plaintiff Zachary Winston ("Plaintiff"), by and through his undersigned attorneys, hereby submits this Verified Shareholder Derivative Complaint (the "Complaint") for the benefit of nominal defendant LKQ Corporation ("LKQ" or the "Company") against certain current and/or former members of its Board of Directors (the "Board") and executive officers seeking to remedy the defendants' non-exculpable breaches of fiduciary duties under Delaware law and violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") from February 2023 through July 2025 (the "Relevant Period"). Plaintiff also asserts a claim for contribution under Sections 10(b) and 21D of the Exchange Act.

Plaintiff alleges the following based upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the pre-suit investigation conducted by and through his attorneys, which included, among other things, public statements made by the Company and the Individual Defendants (defined below), U.S. Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding LKQ, news reports, securities analysts' reports, court filings in related civil lawsuits, including the pending federal securities fraud class action captioned *City of Miami General Employees' & Sanitation Employees' Retirement Trust v. LKQ Corporation et al.*, No. 3:26-cv-00498 (M.D. Tenn.) (the "Securities Action"), advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for further investigation and discovery.

## I. INTRODUCTION

1. This is a shareholder derivative action brought for the benefit of nominal defendant LKQ against certain current and/or former officers and directors of the Company based on their non-exculpable breaches of fiduciary duty, violations of Section 14(a) of the Exchange

Act, and other serious misconduct during the Relevant Period, as alleged in detail herein. Plaintiff also asserts a claim for contribution against certain of the Individual Defendants under Sections 10(b) and 21D of the Exchange Act.

2. LKQ is a publicly traded Delaware corporation which maintains its corporate headquarters in Antioch, Tennessee. According to the Company's public filings, LKQ is a global distributor of alternative collision replacement parts, recycled engines, and other vehicle components for the repair of automobiles.

3. In February 2023, the Individual Defendants announced plans for the Company to acquire its competitor, Uni-Select Inc. ("Uni-Select"), including Uni-Select's U.S. operating subsidiary, FinishMaster. FinishMaster offered automotive refinish and painting services at approximately 200 locations throughout the U.S., accounting for approximately 40% of Uni-Select's annual revenue. LKQ paid approximately $2.1 billion to acquire Uni-Select (the "Acquisition").

4. Throughout the Relevant Period, the Individual Defendants repeatedly touted the benefits of the Acquisition. In announcing the Acquisition in February 2023, the Individual Defendants represented that the Acquisition was a "compelling strategic fit" to "enhance LKQ's business and drive profitable growth." The Individual Defendants also represented that the Acquisition presented "minimal integration risk," including because "Uni-Select's FinishMaster business improves LKQ's scale and product mix to compete" in the North American automotive paint segment.

5. After the Acquisition was completed in August 2023, under the Individual Defendants' direction and on their watch, LKQ began to integrate FinishMaster into the Company's North American operations. During the Relevant Period, the Individual Defendants

touted the integration as a “highly synergistic opportunity” to protect LKQ against losing market share to its competitors. As the FinishMaster integration continued, the Individual Defendants assured stockholders that the integration was “on target” to “capitalize on revenue synergies” that “weren’t there prior to th[e] acquisition.”

6. These and similar public statements to stockholders made throughout the Relevant Period by the Individual Defendants were materially false and misleading. In truth, FinishMaster was losing major customers and market share, including the business of key clients that were critical to revenue. As the Individual Defendants only later admitted, these customer losses began before the Acquisition started and only grew worse as LKQ continued to integrate FinishMaster into its operations.

7. The truth began to emerge on April 23, 2024, when the Individual Defendants surprised stockholders by lowering the Company’s financial guidance, blaming slow demand in LKQ’s North American segment, where FinishMaster was being integrated. It was also announced that LKQ’s longtime President and Chief Executive Officer (“CEO”), defendant Dominick P. Zarcone (“Zarcone”), who oversaw the Acquisition, was departing the Company. As a result of these disclosures, the price of LKQ stock declined by $7.28 per share, or nearly 15%. However, the Individual Defendants reassured stockholders that the Acquisition “was the right thing to do long term” and that the Company had “uncovered additional synergies” during the integration of FinishMaster.

8. On July 25, 2024, the truth further emerged when the Individual Defendants reported disappointing earnings for LKQ’s second fiscal quarter of 2024. The Individual Defendants revealed that LKQ had missed its revenue estimates for the quarter and further lowered the Company’s financial guidance for the rest of the fiscal year, again blaming slowing demand in

LKQ's North American segment. On these disclosures, LKQ's share price declined by $5.53 per share, or more than 12%. In the wake of these disclosures, the Individual Defendants nonetheless reassured stockholders that the Company's acquisition of FinishMaster "helped improve our margins despite the lower revenue."

9. On October 24, 2024, however, the Individual Defendants revealed the real reason for LKQ's declining performance and guidance reductions -- the FinishMaster business that the Individual Defendants had touted as a source of revenue growth and market share protection was, in fact, losing business, including major customers to LKQ's competitors. The Individual Defendants revealed that these losses began "pre-acquisition or pre-closing and leading into post-acquisition." The Individual Defendants assured stockholders, however, that the Company's business had "stabilized" and LKQ would "win back [the] business" it had lost.

10. Then, on April 24, 2025, the Individual Defendants revealed that, contrary to their repeated prior assurances, the Company's North American segment, where FinishMaster was now fully integrated, had continued to lose market share due to competitors consistently undercutting LKQ on price, causing LKQ to miss its revenue and margin targets. As a result of these disclosures, LKQ's share price declined by another $4.87 per share, or nearly 12%.

11. Finally, on July 24, 2025, the Individual Defendants revealed that LKQ's worsening market share losses led the Company to miss its margin targets again, causing its share price to decline another $6.88 per share, or nearly 18%.

12. As a result of these events, the Securities Action was initiated against the Company on April 22, 2026. The Securities Action is brought on behalf of a class of investors who acquired or purchased LKQ shares during the "Class Period" of February 27, 2023 through Juky 23, 2025, and alleges violations of the federal securities laws against LKQ and certain of the

Individual Defendants.

13. As alleged with particularity herein, under Delaware law, there is reason to doubt that at least half of the members of the Company's current Board could respond disinterestedly and/or independently to a pre-suit litigation demand. As a result, this derivative action brought against the Individual Defendants for the benefit of LKQ should proceed.

## II. JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), and Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9, Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b), 78t(a) and 78t-1), SEC Rule 10b5 (17 C.F.R. § 240.10b-5) promulgated thereunder, and Section 21D of the Exchange Act (15 U.S.C. § 78u-4(f)). Plaintiff's claims also raise a federal question pertaining to the claims made in the Securities Action based on violations of the Exchange Act.

15. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

16. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

17. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

18. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 because nominal defendant LKQ maintains its principal executive offices in this District and conducts business in

this District. Further, a significant amount of the conduct at issue took place and had an effect in this District.

## III. THE PARTIES

### A. Plaintiff

19. Plaintiff is a current holder of LKQ common stock and has continuously held LKQ common stock at all relevant times.

### B. Nominal Defendant

20. Nominal defendant LKQ is a publicly traded Delaware corporation headquartered in Antioch, Tennessee. The Company is a global distributor of vehicle components for the repair of automobiles. LKQ common stock trades on the Nasdaq Composite ("NASDAQ") under the ticker symbol "LKQ."

### C. The Individual Defendants

21. Defendant Justin Jude ("Jude") joined the Company in 2004 and has served as a member of the Board and as the Company's President and CEO since July 2024. Prior to defendant Jude being appointed as President and CEO, at the start of the Relevant Period he was serving as LKQ's Senior Vice President ("SVP") and President of its Wholesale – North America segment. Later, from January 2024 until July 2024, defendant Jude served as LKQ's Executive Vice President ("EVP") and Chief Operating Officer ("COO"). Defendant Jude is a named individual defendant in the Securities Action, and the Company's most recent Annual Proxy Statement filed with the SEC and disseminated to stockholders on March 24, 2026 admits that the Board has determined that defendant Jude "is not independent due to his status as a current executive of the Company."

22. Defendant Rick Galloway ("Galloway") joined the Company in 2019 and has served as its SVP and Chief Financial Officer ("CFO") since September 2022. Defendant

Galloway is a named individual defendant in the Securities Action.

23. Defendant Zarcone served as the Company's President and CEO from 2017 until June 2024. Defendant Zarcone also served as a member of the Board from 2017 until May 2025. Defendant Zarcone is a named individual defendant in the Securities Action.

24. Defendant Guhan Subramanian ("Subramanian") served as a Board member from 2013 until August 2025. From 2022 until he left the Board in August 2025, defendant Subramanian served as Chairman of the Board.

25. Defendant Andrew C. Clarke ("Clarke") has served as a member of the Board since July 2024. Defendant Clarke also served during the Relevant Period and currently serves as a member of the Board's Audit Committee (the "Audit Committee"). Further, although defendant Clarke is not the current Chairman of the Audit Committee, he served as Audit Committee Chairman during the Relevant Period.

26. Defendant Blythe J. McGarvie ("McGarvie") served as a member of the Board from 2012 until May 2025.

27. Defendant Patrick Berard ("Berard") served as a member of the Board from 2019 until May 2026.

28. Defendant Jody G. Miller ("Miller") served as a member of the Board from 2018 until January 2026.

29. Defendant John William Mendel ("Mendel") has served as a member of the Board since 2018 and has served as Chairman of the Board since August 2025. Further, although defendant Mendel is not a current member of the Audit Committee, he served as an Audit Committee member during the Relevant Period.

30. Defendant Meg Ann Divitto ("Divitto") has served as a member of the Board since

December 2024. Further, although defendant Divitto is not a current member of the Audit Committee, she served as an Audit Committee member during the Relevant Period.

31. Defendant Xavier Urbain ("Urbain") has served as a member of the Board since December 2024. Defendant Urbain also served during the Relevant Period and continues to serve as a member of the Audit Committee.

32. Defendant James S. Metcalf ("Metcalf") has served as a member of the Board since December 2024.

33. Defendant Joseph M. Holsten ("Holsten") served as a member of the Board from 1998 until May 2024.

34. Defendants Jude, Galloway, Zarcone, Subramanian, Clarke, McGarvie, Berard, Miller, Mendel, Divitto, Urbain, Melcalf, and Holsten are collectively referred to herein as the "Individual Defendants."

35. Defendants Jude, Zarcone, Subramanian, Clarke, McGarvie, Berard, Miller, Mendel, Divitto, Urbain, Melcalf, and Holsten are collectively referred to herein as the "Director Defendants."

36. During the Relevant Period, defendants Clarke, Urbain, Mendel, and Divitto served on the Board's Audit Committee and are referred to together herein as the "Audit Committee Defendants."

## IV. DUTIES OF THE INDIVIDUAL DEFENDANTS

37. By reason of their positions as officers and/or directors of the Company, and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust, loyalty, and due care, and were, and are, required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual Defendants were, and

are, required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interests or benefit. Each director and officer owed to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

38. The Individual Defendants, because of their positions of control and authority as directors and/or officers, were able to, and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.

39. At all times relevant hereto, each of the Individual Defendants was the agent of the other Individual Defendants and of the Company and was at all times acting within the course and scope of such agency.

40. To discharge their duties, the Individual Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company. By virtue of such duties, the Individual Defendants were required to, among other things:

a. manage, conduct, supervise and direct the business affairs of the Company in accordance with all applicable laws;

b. neither violate, nor knowingly permit any officer, director or employee of the Company to violate, applicable laws, rules and regulations;

c. establish and maintain systematic and accurate records and reports of the business and affairs of the Company and procedures for the reporting of the business and affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said

reports and records;

d. neither engage in self-dealing, nor knowingly permit any officer, director or employee of the Company to engage in self-dealing;

e. ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

f. conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

g. ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times; and

h. remain informed regarding how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as necessary to comply with applicable laws.

41. Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and its shareholders the fiduciary duties of loyalty, good faith, the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants alleged herein involves a violation of their obligations as directors and/or officers of the Company, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware, or should have been aware, posed a risk of serious injury to the Company. The conduct of the Individual

Defendants, who were also officers and/or directors of the Company, has been ratified by the remaining defendants.

42. The Audit Committee Defendants owed specific duties to LKQ under the Audit Committee Charter ("Audit Charter"). According to the Audit Charter, the Audit Committee's purpose includes reviewing: "(i) the integrity of the Company's financial statements, (ii) the independent auditor's qualifications and independence, (iii) the performance of the Company's system of internal audit function ('Corporate Audit') and the Company's independent auditor, and (iv) the Company's compliance with laws, regulations, and the Company's Code of Ethics (the 'Ethics Code')."

43. The Audit Charter otherwise sets forth the specific obligations of the Audit Committee, which include, among others:

- reviewing the integrity of the Company's financial reporting processes, both internal and external;
- reviewing and discussing with management and the independent auditor the Company's annual and interim financial statements and determining whether they are complete and consistent with the information known to Audit Committee members, and assessing whether the financial statements reflect appropriate accounting principles;
- Ensuring there is a proper review system in place to ensure that the Company's financial statements, reports and other financial information disseminated to governmental organizations and the public satisfy legal requirements and the Ethics Code;
- Reviewing any evidence of material violations of securities law, breach of fiduciary duty or similar violation by the Company and determining if any remedial action is required and implementing such remedial action, if necessary;
- Reviewing legal compliance matters with the Company's counsel, including any legal matter that could have a significant impact on the Company's financial statements.
- Reporting regularly to the Board any issues that arise with respect to the

quality or integrity of the Company's financial statements, and/or its compliance with legal or regulatory requirements.

## V. FACTS

### A. Background of LKQ and the Acquisition

44. LKQ is a publicly traded Delaware corporation headquartered in Antioch, Tennessee. The Company is global distributor of alternative collision replacement parts, recycled engines, and other vehicle components for the repair of automobiles.

45. In 2023, faced with rising competition, the Individual Defendants caused LKQ to announce the approximately $2.1 billion Acquisition of its competitor Uni-Select, which included Uni-Select's U.S. subsidiary, FinishMaster. The Individual Defendants represented to stockholders that this Acquisition would benefit the Company's business and grow its market share.

### B. The Individual Defendants' Materially False and Misleading Statements to Stockholders During the Relevant Period

46. On February 27, 2023, the Individual Defendants announced that LKQ had entered into a definitive agreement to acquire its competitor, Uni-Select, including Uni-Select's United States segment, FinishMaster. In the press release announcing the Company's definitive agreement to acquire Uni-Select, the Individual Defendants assured stockholders that "[t]he addition of Uni-Select will enhance LKQ's business and drive profitable growth" and that "Uni-Select's FinishMaster business improves LKQ's scale and product mix to compete in this attractive and growing segment with minimal integration risk."

47. That same day, the Individual Defendants caused the Company to hold a conference call with analysts and stockholders to further discuss the definitive agreement to acquire Uni-Select. During the call, defendant Zarcone, LKQ's then-President and CEO (and a Board member), expressed that "[t]here are some very significant financial benefits that will

accompany this acquisition."

48. On July 27, 2023, the Individual Defendants caused LKQ to file with the SEC its Quarterly Report on Form 10-Q for its fiscal year 2023 second quarter. Therein, the Individual Defendants represented that "[t]he Uni-Select Acquisition will complement our existing North American paint distribution operations and provides a scaled position in the Canadian mechanical parts space, with opportunity for future consolidation and growth."

49. On that same day, the Individual Defendants caused LKQ to hold an earnings conference call with analysts and stockholders to discuss the Company's financial results for its fiscal year 2023 second quarter. During the call, an analyst asked defendant Zarcone to discuss the Company's expected synergies from the Acquisition now that internally at LKQ there was more visibility into the Uni-Select business. Defendant Zarcone assured stockholders that the Individual Defendants were "highly confident that there is $55 million of cost synergies that we will be able to get our hands on over the first kind of three years post-transaction."

50. On October 26, 2023, the Individual Defendants caused LKQ to hold an earnings conference call with analysts and stockholders to discuss the Company's financial results for its fiscal year 2023 third quarter. During the call, defendant Zarcone reflected on the many "highlights" of the quarter, and stated that "[o]n August 1, we announced the completion of the Uni-Select acquisition, a bespoke and highly synergistic opportunity that will add positive long-term shareholder value and further widen the competitive moat around our North American business."

51. During that same earnings call, defendant Galloway, the Company's SVP and CFO, discussed LKQ's North America team, which was tasked with the integration of FinishMaster. Defendant Galloway stated that "[a]fter the acquisition of Uni-Select, the North

America team was able to work on integration and achieve a better understanding of the timing of our original assumptions. With increased access to personnel and visibility of financial and operational data, we are updating our projections for 2023 for Uni-Select to be dilutive in the range of $0.04 to $0.06 . . . we are focused on integration and are accelerating synergies related to FinishMaster branches to drive improvement relative to the estimated range and maximize the 2024 benefits. We remain confident in our investment thesis of Uni-Select, and we believe the transaction will be accretive in 2024."

52. On February 22, 2024, the Individual Defendants caused LKQ to file a Current Report on Form 8-K with the SEC. Therein, the Individual Defendants provided an update on the ongoing Uni-Select integration, noting that roughly half of the FinishMaster locations had been converted or consolidated into LKQ locations to date. Specifically, defendant Jude (who at that time was serving as LKQ's EVP and COO) stated that "[o]ur Wholesale – North America team's agility and integration experience has the Uni-Select plan ahead of schedule, and we are confident in our ability to exceed the $55 million of synergies previously disclosed."

53. On that same day, the Individual Defendants caused LKQ to hold an earnings conference call with analysts and stockholders to discuss the Company's financial results for its fiscal year 2023 fourth quarter. During the call, defendant Galloway further discussed the Uni-Select integration progress, noting that, "[t]he Uni-Select integration is progressing ahead of schedule. And with FinishMaster and LKQ locations merging, it's becoming increasingly difficult to determine a stand-alone Uni-Select impact. Therefore, we will not provide specific Uni-Select impacts on the North American results going forward, but we'll instead report just on synergy achievement."

54. During that same earnings call, defendant Jude reiterated that he was "confident

of [LKQ's] ability to generate positive, operational and financial returns with our Uni-Select business integration." Defendant Jude also discussed the progress of the Uni-Select Acquisition and FinishMaster integration, explaining that "the North American wholesale team is focused on the integration of our Uni-Select acquisition and taking full advantage of the tremendous synergies that exist within our global footprint. I'm extremely proud of how the team is performing with the integration."

55. On April 23, 2024, the Individual Defendants caused LKQ to file a Current Report on Form 8-K with the SEC. Therein, when announcing LKQ's results for the 2024 first quarter, the Individual Defendants touted that "Uni-Select synergies accelerated and increased from $55 million to $65 million."

56. On that same day, the Individual Defendants caused LKQ to hold an earnings conference call with analysts and stockholders to discuss the Company's financial results for its fiscal year 2024 first quarter. In his opening remarks on the call, defendant Jude stated, "I want to again emphasize that Uni-Select was a unique opportunity that will enable us to widen the moat around our North American business and capitalize on revenue synergies that exist with paint and hard parts. I am confident and committed to this transaction, generating positive financial metrics for all stakeholders." Then, during his closing remarks, defendant Jude further touted "the Uni-Select acquisition that's going to bring us tremendous synergies."

57. The Individual Defendants' public statements set forth above from February 2023 through April 2024 in the Company's press releases, Quarterly Reports and Current Reports with the SEC, and on conference calls were materially false and misleading. In truth, FinishMaster was losing major customers from the time the Acquisition was announced and its business could not sustain, let alone grow, LKQ's eroding market share. Further, to the extent that the Individual

Defendants purported to warn stockholders of the risks regarding the Uni-Select Acquisition and FinishMaster integration, the Individual Defendants failed to disclose that such risks had already materialized and were negatively impacting LKQ's operational and financial performance.

58. In addition to the Individual Defendants' false and misleading statements discussed above, the Director Defendants also caused the Company to issue false and misleading Annual Proxy Statements during the Relevant Period, including the Schedule 14A Proxy Statements disseminated to stockholders and filed with the SEC on March 20, 2023, March 22, 2024, and March 25, 2025 (collectively, the "False Proxies"). The False Proxies each sought stockholder votes to, among other things, re-elect the Director Defendants to serve on the Board.

59. The Director Defendants drafted, approved, reviewed, and/or signed the False Proxies before they were filed with the SEC and disseminated to LKQ stockholders. The Director Defendants negligently issued materially misleading statements in the False Proxies. These allegations are based solely on negligence, are not based on any allegations of recklessness or knowing conduct by or on behalf of the Director Defendants, and they do not allege or do not sound in fraud. Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference or any allegation of fraud, scienter, or recklessness with regard to the False Proxies allegations and related claims.

60. In support of re-electing themselves, the Director Defendants highlighted their supposed oversight of the Company in the False Proxies. In the 2023 Proxy, the Director Defendants stated:

> We have processes in place to manage our key strategic, operational, financial, and compliance risks. Our entire Board of Directors is responsible for monitoring and evaluating the risks we face and our risk management processes. We implement our risk management processes through the regular reports to the Board of such risks by our Chief Executive Officer and other appropriate executives (including our Chief Financial Officer and our General Counsel) with respect to matters within

their areas of expertise, including such matters as acquisitions, capital raising transactions, financial accounting matters and legal issues.

Our Board members engage in discussions with these officers regarding their areas of expertise, including assessments of the risks relating thereto. In addition, our Corporate Audit department develops a risk-based audit plan annually that is reviewed with our Audit Committee, along with the results of internal audit reviews and activities. We also have a Risk Management Committee ("RMC") composed of key members of management including our business units. The purpose of the RMC is to identify and prioritize enterprise-wide strategic risks, assign owners to such risks, and track remediation efforts. The RMC periodically reports its findings to the Board of Directors.

61. Thereafter, in both the 2024 and 2025 Proxies, the Director Defendants stated:

We have processes in place to manage our key strategic, operational, financial and compliance risks. Our entire Board of Directors is responsible for monitoring and evaluating the risks we face and our risk management processes. We implement our risk management processes through the regular reports to the Board of such risks by our Chief Executive Officer and other appropriate executives (including our Chief Financial Officer and our General Counsel) with respect to matters within their areas of expertise, including such matters as acquisitions, capital raising transactions, financial accounting matters and legal issues. Our Board members engage in discussions with these officers regarding their areas of expertise, including assessments of the risks relating thereto. In addition, our Corporate Audit department develops a risk-based audit plan annually that is reviewed with our Audit Committee, along with the results of internal audit reviews and activities. We also have a Risk Management Committee ("RMC") composed of key members of management including our business units. The purpose of the RMC is to identify and prioritize enterprise-wide strategic risks, assign owners to such risks and track remediation efforts. The RMC periodically reports its findings to the Board of Directors.

The Board of Directors, in coordination with the Audit Committee of the Board and the RMC, also oversees the Company's programs for monitoring the Company's information security status. The Company's cybersecurity policies, standards, processes and practices are fully integrated into the Company's operations and are based on recognized frameworks established by the International Organization for Standardization, the National Institute of Standards and Technology and other applicable industry standards. In general, the Company seeks to address cybersecurity risks through a comprehensive, cross-functional approach that is focused on preserving the confidentiality, integrity and availability of the information that the Company collects and stores by identifying, preventing and mitigating cybersecurity threats and effectively responding to cybersecurity incidents when they occur. The Company's Chief Information Officer and the Chief Information Security Officer present a formal report to the Board of Directors at least annually covering the security threat landscape, security incidents affecting

> the Company and the readiness of the Company's security program. Several members of the Board have experience in the digital technology area and are thus particularly suited to overseeing the Company's information security matters. The Company carries a global cyber liability insurance policy that we believe is appropriate for our Company's risk.

62. In the False Proxies, the Director Defendants thus assured stockholders that they understood Company-wide risks, and actively oversaw the Company's risks and exposures, as well as steps taken to monitor and mitigate risk exposures. In reality, the Director Defendants were utterly failing in their oversight duties by allowing the Company to operate with inadequate internal controls which resulted in the failure to disclose or prevent the Individual Defendants from causing the Company to make materially false and misleading statements concerning that: (a) in reality, FinishMaster had been losing significant customers since the Acquisition was announced, and its business was unable to support, let alone reverse, LKQ's declining market share; and (b) while LKQ purported to caution stockholders about risks associated with the Uni-Select Acquisition and the integration of FinishMaster, it failed to disclose that those risks had already materialized and were adversely affecting LKQ's operational and financial results.

63. As a result of these misleading statements in the False Proxies, the Company's stockholders voted via an uninformed stockholder vote to re-elect the Director Defendants to the Board.

### C. The Truth Gradually Emerges as the Individual Defendants Continue to Mislead Stockholders

64. The truth began to emerge on April 23, 2024, when the Individual Defendants announced that they had lowered both LKQ's revenue guidance and its earnings guidance for the 2024 fiscal year. The Individual Defendants attributed the reduction of the Company's earnings projections to the worsening performance of its North American operations, where FinishMaster was being integrated, but blamed its declining performance on slowing demand and warmer

weather reducing the need for auto repairs. It was also announced that defendant Zarcone, who oversaw the Acquisition and FinnishMaster integration as LKQ's President and CEO, would be departing the Company. On these disclosures, the Company's stock price fell by $7.28 per share, or nearly 15%.

65. Following these disclosures, the Individual Defendants reassured stockholders that the Acquisition "was the right thing to do long term" and that the integration of FinishMaster had even "uncovered additional synergies" beyond their initial projections. These statements were materially false and misleading. In truth, FinishMaster was losing major customers from the time the Acquisition was announced and its business could not sustain, let alone grow, LKQ's eroding market share.

66. On July 25, 2024, the Individual Defendants reported LKQ's disappointing financial results for the second quarter of 2024. LKQ failed to meet the reduced revenue targets that the Individual Defendants had set only one quarter earlier. The Individual Defendants attributed the poor results to the demand issues impacting the performance of LKQ's North American operations and further reduced the Company's financial guidance for the 2024 fiscal year. However, the Individual Defendants stated that "accelerating the FinishMaster integration" had "helped improve our margins despite the lower revenue." As a result of these disclosures, LKQ's share price fell by $5.53 per share, or more than 12%. Defendant Zarcone departed the Company in June 2024, less than a month before the Individual Defendants revealed this news.

67. Next, on October 24, 2024, the Individual Defendants further revealed that LKQ's recent earnings misses were driven by the poor performance of the FinishMaster business, which they admitted was experiencing significant customer losses since the Acquisition was first announced.

68. Nonetheless, that same day, the Individual Defendants reassured stockholders that they had "moderated the loss and started to grow share." This statement was materially false and misleading. In truth, FinishMaster was losing major customers from the time the Acquisition was announced and its business could not sustain, let alone grow, LKQ's eroding market share.

69. On February 20, 2025, the Individual Defendants caused LKQ to hold an earnings conference call with analysts and stockholders to discuss the Company's financial results for its fiscal year 2024 fourth quarter. During this earnings call, defendant Jude (who had been serving as President and CEO and as a Board member since June 2024) boasted about the Company's performance in 2024, and specifically touted the integration of FinishMaster into the LKQ network, stating, "[n]ot only did the North American team deliver the integration faster than expected, but with a higher level of synergies than originally planned." These statements were materially false and misleading. In truth, FinishMaster was losing major customers from the time the Acquisition was announced and its business could not sustain, let alone grow, LKQ's eroding market share.

70. Then, on April 24, 2025, the Individual Defendants reported that LKQ's Wholesale North America segment, where FinishMaster was now fully integrated, missed quarterly revenue targets by approximately $200 million. The Individual Defendants also reported that, contrary to their assurances that FinishMaster improved the Company's margins, the segment missed adjusted earnings before interest, taxes, depreciation, and amortization ("EBITDA") margin targets by $24 million and suffered a year-over-year decline of 9%. On this news, LKQ's share price declined by another $4.87 per share, or nearly 12%.

71. On July 24, 2025, the Individual Defendants reported that the segment's margin performance continued to deteriorate due to competitors taking market share by undercutting LKQ

on price. LKQ again missed its EBITDA targets by approximately $20 million and suffered a year-over-year decline of 11%. The Individual Defendants admitted that the Company's earnings and margin declines were predominantly driven by business losses from increased competition from others in the industry. As a result of these disclosures, LKQ's share price declined by another $6.88 per share, or nearly 18%.

## VI. DAMAGES TO LKQ

72. LKQ has been, and will continue to be, severely damaged and injured by the Individual Defendants' breaches of fiduciary duty and other misconduct.

73. As a direct and proximate result of the Individual Defendants' misconduct, LKQ has expended and will continue to expend significant sums of money. Such expenditures include, but are not limited to:

a. legal fees associated with the lawsuits filed against LKQ and its officers and directors for violations of the federal securities laws;

b. loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Individual Defendants' false statements and lack of candor to the marketplace; and

c. loss of revenues and profits.

## VII. DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

74. Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress the Individual Defendants' breaches of fiduciary duties.

75. Plaintiff is a current shareholder of the Company and has been a shareholder of the Company continuously at all relevant times.

76. Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

77. As a result of the facts set forth herein, Plaintiff has not made any demand on the Board to institute this action against the Individual Defendants. Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously pursue this action.

78. The Board currently consists of eight (8) directors: defendants Jude, Clarke, Divitto, Mendel, Metcalf, and Urbain, and non-parties Sue Gove and Michael S. Powell. A derivative plaintiff need only demonstrate reason to doubt that half -- in this instance, four (4) -- of a Delaware corporation's directors are disinterested or objective in order to establish pre-suit demand excusal.

79. Each of defendants Jude, Clarke, Divitto, Mendel, Metcalf, and Urbain – a majority of the members (6 out of 8) of the current Board -- face a substantial likelihood of liability in this action because they caused and/or permitted the Company to make false and misleading statements and omissions concerning the information described herein. Because of their advisory, managerial, and directorial positions within the Company, defendants Jude, Clarke, Divitto, Mendel, Metcalf, and Urbain had knowledge of material, non-public information regarding the Company and were directly involved in the operations of the Company at the highest levels.

80. Defendants Jude, Clarke, Divitto, Mendel, Metcalf, and Urbain either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

81. Defendants Jude, Clarke, Divitto, Mendel, Metcalf, and Urbain all face a substantial likelihood of liability for their actions in issuing some or all of the False Proxies, which resulted in their re-appointment to the Board (and other Director Defendants' re-appointment to the Board) despite their breaches of fiduciary duty.

82. Defendants Jude, Clarke, Divitto, Mendel, Metcalf, and Urbain cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action. For the reasons that follow, and for reasons detailed elsewhere in this complaint, Plaintiff has not made (and should be excused from making) a pre-filing demand on the Board to initiate this action because making a demand would be a futile and useless act.

83. Plaintiff has also adequately alleged that there is reason to doubt that at least four (4) current directors of LKQ are capable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action for other reasons set forth below.

84. First, defendant Jude is incapable of independently considering a demand to commence and vigorously prosecute this action because defendant Jude's principal professional occupation is his employment as President and CEO of the Company. The Company's Annual Proxy Statements on Form DEF 14A also admit that defendant Jude is not independent. Indeed, the Company's most recent Annual Proxy Statement filed with the SEC and disseminated to stockholders on March 24, 2026 admits that the Board has determined that defendant Jude "is not independent due to his status as a current executive of the Company." Moreover, defendant Jude is a named individual defendant in the Securities Action pending against the Company. Accordingly, for these reasons, defendant Jude is incapable of independently and disinterestedly considering a demand to commence and vigorously prosecute this action against those defendants who control his annual compensation.

85. Further, defendants Clarke, Urbain, Mendel, and Divitto each served as members of the Audit Committee during the Relevant Period. As such, they were responsible for the effectiveness of the Company's internal controls, the truth and accuracy of the Company's financial statements, and the Company's compliance with applicable laws and regulations. During

the Relevant Period, they each violated the Audit Committee Charter by engaging in or permitting the Company to engage in the dissemination of materially false and misleading statements to the public and to facilitate the Individual Defendants' violations of law, including breaches of fiduciary duty; failed to adequately exercise their risk management and risk assessment functions; and failed to ensure adequate Board oversight of the Company's internal control over financial reporting, disclosure controls and procedures, and its Ethics Code. Thus, the four Audit Committee Defendants -- Clarke, Urbain, Mendel, and Divitto -- breached their fiduciary duties, are not independent or disinterested, and thus demand is excused as to them.

**COUNT I**

**Breach of Fiduciary Duty Against the Individual Defendants**

86. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

87. The Individual Defendants, as current or former LKQ officers and/or directors, owe (or owed) the Company the fiduciary duties of due care, loyalty, good faith, candor, oversight, reasonable inquiry, and supervision.

88. By virtue of their positions as LKQ directors and/or officers, these Individual Defendants at all relevant times had the power to (and did) control, influence, and cause the Company to engage in the practices complained of herein, including the false and misleading statements alleged herein.

89. Each Individual Defendant was required to: (a) use his or her ability to control and manage LKQ in a fair, just, and equitable manner; and (b) act in furtherance of the best interests of LKQ rather than his or her own interests.

90. By their acts alleged herein, including but not limited to causing LKQ to issue

false and misleading statements while concealing material adverse information and failing to ensure that the Company maintained adequate internal controls regarding financial disclosures, the Individual Defendants each breached their fiduciary duties.

91. The Individual Defendants acted in bad faith, willfully, and/or recklessly in violating their fiduciary duties owed to the Company.

92. LKQ has been injured as a direct and proximate result of the Individual Defendants' wrongful conduct.

**COUNT II**

**Violation of Section 14(a) of the Exchange Act Against the Director Defendants**

93. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

94. The section 14(a) Exchange Act claims alleged herein are based solely on negligence. They are not based on any allegation of reckless or knowing conduct by or on behalf of the Director Defendants. The section 14(a) Exchange Act claims detailed herein do not allege and do not sound in fraud. Plaintiff specifically disclaims any allegation of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to the nonfraud claims.

95. The Director Defendants negligently issued, caused to be issued, and participated in the issuance of materially misleading written statements to stockholders which were contained in the False Proxies. In the False Proxies, the Board solicited stockholder votes to reelect the Director Defendants to the Board.

96. The False Proxies, however, misrepresented and failed to disclose the Board's risk oversight and the Company's inadequate internal controls, which facilitated the illegal behavior

described herein. By reasons of the conduct alleged herein, the Director Defendants violated section 14(a) of the Exchange Act. As a direct and proximate result of these defendants' wrongful conduct, LKQ misled and deceived its stockholders by making materially misleading statements that were essential links in stockholders following the Company's recommendation and voting to reelect the Director Defendants.

97. Plaintiff, on behalf of LKQ, thereby seeks relief for damages inflicted upon the Company based upon the False Proxies in connection with the improper reelection of the Director Defendants to the Board.

**COUNT III**

**Unjust Enrichment Against the Individual Defendants**

98. Plaintiff incorporates by reference and re-alleges each allegation set forth above, as though fully set forth herein.

99. By their wrongful acts, violations of law, and inaccurate and untruthful information and/or omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and the detriment of, the Company.

100. The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from the Company that was tied to the performance of the Company or its stock price or received compensation or other payments that were unjust in light of the Individual Defendants' bad faith conduct.

101. Plaintiff, as a shareholder and representative of the Company seeks restitution from the Individual Defendants and seek an order from this Court disgorging all profits, including from the redemption of preferred stock, benefits, and other compensation, including any

performance based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

102. Plaintiff, on behalf of LKQ, has no adequate remedy at law.

**COUNT IV**

**Against Defendants Jude, Galloway, and Zarcone for Contribution Under Sections 10(b) and 21D of the Exchange Act**

103. Plaintiff incorporates by reference and re-alleges each allegation set forth above, as though fully set forth herein.

104. LKQ and defendants Jude, Galloway, and Zarcone have all been named as defendants in the Securities Action, which asserts claims under the federal securities laws for violations of Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder. If and when the Company is found liable in the Securities Action for these violations of the federal securities laws, the Company's liability will be in whole or in part due to the willful and/or reckless violations of defendants Jude, Galloway, and Zarcone's obligations as officers of LKQ.

105. Defendants Jude, Galloway, and Zarcone, because of their positions of control and authority as officers of LKQ, were able to and did, directly, and/or indirectly, exercise control over the business and corporate affairs of LKQ, including the wrongful acts complained of herein and in the Securities Action.

106. Accordingly, defendants Jude, Galloway, and Zarcone are liable under 15 U.S.C § 78j(b), which creates a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

107. As such, LKQ is entitled to receive all appropriate contribution or indemnification

from defendants Jude, Galloway, and Zarcone.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A. Against all the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties;

B. Directing LKQ to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

C. Awarding to LKQ restitution from the Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Individual Defendants;

D. Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs and expenses; and

E. Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Date: July 29, 2026

Respectfully submitted,

*Michael K. Atkins*
Michael K. Atkins (BPR #017862)
**REYNOLDS, ATKINS,**
**BREZINA & STEWART, PLLC**
606 W. Main Street, Suite 225
Knoxville, Tennessee 37902
(865) 525-0505 Office
(865) 805-5075 Cell
mka@rabslaw.com

*Local Counsel for Plaintiff*

**POMERANTZ LLP**
Gustavo F. Bruckner
Samuel J. Adams
Ankita Sangwan
600 Third Avenue
New York, NY 10016
(212) 661-1100

**SHUMAN, GLENN & STECKER**
Brett D. Stecker
326 W. Lancaster Avenue
Ardmore, PA 19003
(303) 861-3003

*Additional Plaintiff's Counsel*